1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   EDWARD L. KEMPER,

11           Plaintiff,                    No. CIV S-07-0647 DAD

12      v.

13   FAIRMONT FOLSOM, LLC, and         PRETRIAL ORDER (TENTATIVE)
     CWS APARTMENT HOMES, LLC,
14
             Defendants.
15   _____/

16              Pursuant to court order, the Final Pretrial Conference was held in this action on

17   October 1, 2009.  Attorney Keith D. Cable appeared in person and attorneys Miguel M. de la O

18   and Charles D. Ferguson appeared telephonically for plaintiff.  James O. McLaughlin, Esq.

19   appeared for defendants.  The parties were directed to file and have filed an amended joint

20   pretrial statement that includes a list of facts not disputed by any party, an amended list of factual

21   issues in dispute, each party's list of exhibits, and each party's list of witnesses.  The court now

22   makes the following findings and orders:

23                        **I.  JURISDICTION/VENUE**

24              Jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343, and 1367.  Venue is

25   predicated upon 28 U.S.C. § 1391(b).  Plaintiff's federal claims arise under Title III of the

26   Americans With Disabilities Act (ADA), 42 U.S.C. § 12181, et seq., and the Fair Housing Act

1    (FHA), 42 U.S.C. § 3601, et seq., and his state claims arise under the California Disabled

2    Persons Act (DPA), California Civil Code § 54, et seq., and the Unruh Civil Rights Act (Unruh

3    Act), California Civil Code § 51.  Jurisdiction and venue are uncontested and are hereby found to

4    be proper.

5                                    **II.  JURY/NON-JURY**

6               Plaintiff did not file a jury demand.  Defendants included a jury demand in their

7    answer to the complaint.  The matter will therefore be tried before a jury.  The "struck jury"

8    system will be used to select the jury.[1]  Fourteen prospective jurors, randomly selected by the

9    Jury Administrator, will be seated for voir dire.  The order of the jurors' random selection is

10   reflected by the order in which they will be seated.  Each party shall be entitled to three

11   peremptory challenges.  See 28 U.S.C. § 1870.  Peremptory challenges will be exercised silently,

12   by passing the strike sheet between the parties, with the plaintiffs going first in each round.  To

13   use a challenge, counsel will write the seat number of the juror above the line where the

14   challenge is required to be designated.  A party who does not use a challenge waives any further

15   right to exercise that challenge and is required to reflect this waiver by writing the word "pass"

16   on the strike sheet where the challenge was supposed to have been exercised.  The jurors

17   remaining after the exercise of all challenges will constitute the jury in the case, up to a

18   maximum of eight jurors.  If more than eight remain after all challenges are exercised or passed,

19   jurors 1 through 8 will constitute the jury.

20   /////

21   /////

22   /////

23

24        [1]  As explained in United States v. Blouin, 666 F.2d 796, 798 (2d Cir. 1981), "[t]he goal
     of the 'struck jury' is to whittle down an initially selected group . . . . [to the number of jurors]
25   who will serve as the petit jury."  The selected group consists of the jurors who will hear the
     case, plus the number of jurors required to enable the parties to use the combined number of
26   peremptory challenges allotted to both sides for striking jurors from the group.

### III.  UNDISPUTED FACTS[2]

A.    **Undisputed Core Facts Relevant to All Claims**

1.    The Fairmont at Willow Creek Apartment Homes ("Fairmont at Willow Creek") leasing office, the prospective tenant parking area, the entrance to the leasing office and the leasing office men's restroom come within the purview of the ADA, the Unruh Act, and the DPA § 54(a), and the ADAAG and California Building Code ("CBC") accessibility guidelines for disabled persons apply.

2.    Plaintiff's Fairmont at Willow Creek apartment and the common areas of Fairmont at Willow Creek come within the purview of the Fair Housing Act and the DPA § 54.1(b)(1).

3.    Fairmont Folsom, LLC and CWS Apartment Homes, LLC own, operate and manage Fairmont at Willow Creek in Folsom, California.

4.    Fairmont at Willow Creek was constructed in 2001, and the date of first occupancy was June 24, 2002.

5.    Since June 2002, Kris Bell has been employed with CWS Apartment Homes, LLC as an on-site property manager at Fairmont at Willow Creek.

6.    Jack Sipes was employed with CWS Apartment Homes, LLC as chief operating officer from October 2002 through July 2008.

/////

---

[2]  Despite being permitted two attempts, the statements of undisputed and disputed facts submitted by the parties remain seriously flawed.  The statements submitted were argumentative and in large part directed at minute facts, wholly irrelevant to the trial of this action.  Were the court to have unlimited resources to devote to this pretrial order, it would edit and largely rewrite the statements provided by the parties.  Because the court's resources are not unlimited, the statements of the parties are included in this pretrial order with limited editing.  However, the parties shall not construe the inclusion of any undisputed or disputed fact in this order as indicating that the court deems any particular "fact" relevant to the trial of this action or as indicating that any evidence relating to such "facts" will be admitted at trial.  Moreover, based upon the unnecessarily lengthy statements of undisputed and disputed facts submitted by the parties, the court is now skeptical of their estimates regarding the anticipated length of trial.  The court now believes that the trial of this case should not consume more than three full days.

7.     Sera Andersen was employed with CWS Apartment Homes, LLC as a leasing consultant at Fairmont at Willow Creek from January 2006 through January 2008.

8.     In 2003, Aza Cheung separated from her husband Sze-Wo Cheung and moved from Colorado to Folsom, California with the couple's two minor children Alec and Asela Cheung.

9.     Alec Cheung suffers from autism.  Aza Cheung has a friend Camilla who also has an autistic child and who also had moved from Colorado to Folsom.  Camilla advised Aza Cheung that her son's involvement with the U.C. Davis Mind Institute and the Folsom school system's special education programs had been helpful to her autistic child. This information imparted by Camilla was a reason Aza Cheung elected to move to Folsom.

10.    Aza Cheung selected Fairmont at Willow Creek as a residence based on a reference from Camilla, who had resided there.  Aza Cheung and her two children became tenants at Fairmont at Willow Creek in a one bedroom third floor unit (no. 335) pursuant to a one-year written lease on August 1, 2003.  Aza Cheung renewed her one-year lease for unit no. 335 in the years 2004 and 2005.

11.    Plaintiff has owned a condominium in Fair Oaks, California since January 2002 and lived at the "Fair Oaks condominium" when he met Aza Cheung in the Spring or early Summer of 2006, approximately one year after the Cheungs' divorce was finalized. At that time, Aza Cheung and her children were still living in Fairmont at Willow Creek unit no. 335.

12.    On January 4, 2007, at the instruction of Kris Bell, Sera Andersen posted a "Notice of Lease Violation" on the door to Aza Cheung's unit, identifying two lease violations for "unauthorized occupant" and "unauthorized animals."  The Notice requested that Aza Cheung contact an owner's representative within 24 hours. At approximately the same time the Notice was posted, a parking violation and tow away warning was placed on Plaintiff's 1986 GMC.

/////

/////

4

13.     At the time the Notices of lease and parking violations were issued, Aza Cheung, her two children, and Plaintiff were returning from a trip to the State of Washington.  The trip was made in a motor home rented by Plaintiff.  Plaintiff did all the driving.

14.     On January 31, 2007, Plaintiff forwarded to the Fairmont at Willow Creek staff an email, to the attention of "Sera - accessible apartment 111", advising that he was disabled and required the use of a wheelchair "whenever and wherever I have access" and that he lived in one of the accessible apartments and had a few accommodation requests.  Plaintiff itemized his requests in the e-mail.

15.     Plaintiff's lawsuit against Defendants was filed on April 4, 2007.

16.     Plaintiff and Aza Cheung were married on April 7, 2007.

17.     Plaintiff executed a Fairmont at Willow Creek lease agreement as co-lessee with Aza Cheung on April 18, 2007.

18.     Plaintiff became a licensed chiropractor in 1983.

19.     In the mid-90s, Plaintiff was involved in a two car rear-end accident involving a bump in the back of his car with not much property damage.  Plaintiff pursued a neck injury claim against the other driver which was settled with the driver's insurance company.  Plaintiff treated with a female chiropractor friend whose name he could not recall at his deposition.

20.     In 2005, Plaintiff made a personal injury claim against the City of Sacramento, claiming that he was pitched out of his wheelchair when he encountered a purportedly illegal curb ramp on a City of Sacramento street.  Plaintiff attributed wrist and hand injuries to the accident, the treatment for which included surgical intervention.

21.     While still practicing as a chiropractor, Plaintiff began studying laws relating to disabled persons' rights to equal access through the internet and reading court cases.

22.     Plaintiff filed a discrimination lawsuit based on denial of equal access against his home owner's association at the Fair Oaks Condominium complex where he has owned a condominium since 2002.  That case has been dismissed for the time being.

1    23.   Although Plaintiff is physically capable of driving a car, he primarily uses a power

2    wheelchair when traveling public streets and accessing public accommodations.

3    24.   Plaintiff obtained a marijuana prescription from a medical doctor whose name he

4    cannot recall over two years ago and perhaps as far back as five years ago.   The most recent

5    physician to prescribe marijuana was Dr. Molly Fry from Cool, California.   Plaintiff uses

6    marijuana on a normal routine daily basis.

7    25.   Plaintiff has a disabled placard issued by the State of California, Department of

8    Motor Vehicles.

9    26.   Plaintiff has also been issued a disabled hunting license, California State Parks

10   disabled discount pass, mobility disabled person's motor vehicle hunting license, paratransit

11   disabled certification, and free fishing license due to disability.

12   27.   Plaintiff primarily uses a power wheelchair and a manual wheelchair for mobility

13   when traveling about in public.

14   28.   On or about February 13, 2007, Plaintiff contacted the local police department,

15   which enforced violations against Fairmont at Willow Creek employees who parked in front of

16   the rental office and blocked the path of travel or parking in the access aisles of accessible

17   parking spaces.

18   **B.**   **Undisputed Core Fact Relevant to Alleged Violation of the ADA**

19   1.   The Fairmont at Willow Creek leasing office, the prospective tenant parking area,

20   the entrance to the leasing office, and the leasing office men's restroom come within the purview

21   of the ADA.

22   **C.**   **Undisputed Core Fact Relevant to Alleged Violation of the FHA**

23   1.   Plaintiff's Fairmont at Willow Creek apartment and the common areas of the

24   Fairmont at Willow Creek come within the purview of the FHA.

25   /////

26   /////

6

**D.      Undisputed Core Facts Relevant to Alleged Violation of the DPA**

1.      The Fairmont at Willow Creek leasing office, the prospective tenant parking area, the entrance to the leasing office, and the leasing office men's restroom come within the purview of the DPA.

2.      The Fairmont at Willow Creek common areas and apartment units come within the purview of the DPA.

**E.      Undisputed Core Fact Relevant to Alleged Violation of the Unruh Act**

1.      The Fairmont at Willow Creek leasing office, the prospective tenant parking area, the entrance to the leasing office, and the leasing office men's restroom come within the purview of the Unruh Act.

**F.      Undisputed Core Facts Relevant to Alleged Retaliatory Conduct by Defendants**

1.      Plaintiff has owned a condominium in Fair Oaks, California since January 2002 and was living at his Fair Oaks condominium when he met Aza Cheung in the Spring or early Summer of 2006, approximately one year after the Cheungs' divorce was finalized, at which time Aza Cheung and her children were living in Fairmont at Willow Creek unit no. 335.

2.      On January 4, 2007, at the instruction of Kris Bell, Sera Andersen posted a "Notice of Lease Violation" on the door to Aza Cheung's unit, identifying two lease violations for "unauthorized occupant" and "unauthorized animals." The Notice requested that Aza Cheung contact an owner's representative within 24 hours. At approximately the same time the Notice was posted, a parking violation and tow away warning was placed on Plaintiff's 1986 GMC.

3.      At the time the Notices of lease and parking violations were issued, Aza Cheung, her two children, and Plaintiff were returning from a trip to the State of Washington. The trip was made in a motor home rented by Plaintiff. Plaintiff did all the driving.

4.      On January 31, 2007, Plaintiff forwarded to Fairmont at Willow Creek staff an email to the attention of "Sera - accessible apartment 111," advising that he was disabled and required the use of a wheelchair "whenever and wherever I have access" and that he lived in one

of the accessible apartments and had a few accommodation requests.  Plaintiff itemized his requests in the e-mail.

5.      Plaintiff's lawsuit against Defendants was filed on April 4, 2007.

6.      Plaintiff and Aza Cheung were married on April 7, 2007.

7.      Plaintiff executed a Fairmont at Willow Creek lease agreement as co-lessee with Aza Cheung on April 18, 2007.

## IV.  DISPUTED FACTUAL ISSUES

**A.      Disputed Core Facts Relevant to All Claims**

1.      Whether Sze-Wo Cheung executed each of the three one-year leases for 2003, 2004, and 2005 at Fairmont at Willow Creek as co-lessee so that Aza Cheung could meet CWS Apartment Homes, LLC's income criteria and whether, since the move to California, Sze-Wo Cheung has sent Aza Cheung approximately $3,000 a month for family support, but primarily for the children.

2.      Whether Aza Cheung signed a Fairmont at Willow Creek rental application form which bears the typed date of August 15, 2006 requesting a two bedroom apartment in which

a.      Aza Cheung provided Plaintiff's name in response to the portion of the rental application that requests an "emergency contact person over 18, who will not be living with you" and identified her relationship with Plaintiff as "Friend";

b.      Aza Cheung provided the names of Alec (DOB 12/4/90) and Asela (DOB 2/24/94) Cheung in response to the request for the "names of persons under 18 and other adults who will occupy the unit without signing the lease";

c.      Aza Cheung marked the box "no" in response to the question "will you or any occupant have an animal?" under the "Other Information" portion of the rental application;

d.      Aza Cheung identified her vehicle - a 2006 dark gray Toyota, CA license no. 5SIM992 - in response to the portion of the rental agreement requesting that the applicant

/////

1   "list all vehicles to be parked by you or any occupants (including cars, trucks, motorcycles,

2   trailers, etc.)."

3       3.    Whether on September 21, 2006, Aza Cheung signed a Fairmont at Willow Creek

4   "Offer to Rent" form for the rental of two-bedroom unit no. 111 and whether Aza Cheung and

5   Sze-Wo Cheung executed a one-year lease for unit no. 111 on October 6 and October 7, 2006,

6   respectively.

7       4.    Whether on January 5, 2007, Aza Cheung conversed with Sera Andersen

8   regarding the Notices of lease and parking violations and Sera Andersen informed Aza Cheung

9   that Plaintiff would have to sign a rental application if he intended to live at Fairmont at Willow

10  Creek, and whether later that same day Aza Cheung brought in a "Rental Application for

11  Residents and Occupants" form completed and signed by Plaintiff and dated January 5, 2007, in

12  which plaintiff identified himself as "disabled/retired" in the Rental Application, indicated that

13  he owned a 12 year old yellow lab service dog, and identified his vehicle as a "GMC/WHT/Year

14  "86."

15      5.    Whether the Fairmont at Willow Creek suggested to Aza Cheung on January 5,

16  2007, that Plaintiff's vehicle be moved periodically to avoid being tagged again with a notice of

17  parking violation, whether plaintiff's vehicle was not moved from the parking spot it occupied

18  when the parking violation was placed on it for a considerable period of time after January 5,

19  2007, whether during that extended time no parking violation notice was placed on the car, and

20  whether no further request was made by the Fairmont at Willow Creek staff that the vehicle be

21  moved.

22      6.    Whether, upon receiving Plaintiff's Rental Application identifying the animal

23  being housed at Aza Cheung's apartment as a "service dog," the Fairmont at Willow Creek staff

24  forwarded Aza Cheung and Plaintiff two forms entitled "Request for Reasonable

25  Accommodation" and "Verification of Disability for Modification or Accommodation" and

26  whether these forms were accompanied by a cover letter dated January 29, 2007, advising that

"clarification is need [sic] in the Request for Reasonable Accommodation" relative to the service dog.

7.      Whether Plaintiff completed and returned either the Request for Reasonable Accommodation form or the Verification of Disability for a Modification or Accommodation form.

8.      Whether Sera Andersen prepared a lease contract bearing a typed date of March 2, 2007, for Fairmont at Willow Creek apartment no. 111, identifying the lessees as Sze-Wo Cheung, Aza Cheung, and Edward Kemper, and whether the lease included an "Animal Addendum" allowing "Delores - service dog," owned by Ed Kemper, to be housed at the apartment.

9.      Whether Aza Cheung expressed to Sera Andersen her concern over having both Sze-Wo Cheung and Plaintiff on the lease partially out of fear that Sze-Wo Cheung would stop sending her money and whether Sze-Wo Cheung was then removed from the proposed lease because Aza Cheung met the income requirements with Plaintiff as a co-lessee.

10.     Whether during approximately the first half of his chiropractic career Plaintiff's practice included treating personal injury claimant patients, sometimes on a lien basis, which involved dealing with the courts to convince them that his treatment was necessary and whether plaintiff would refer these patients when he deemed it appropriate to orthopedist William Duffy, M.D.

11.     Whether in 1992, while en route to a chiropractic convention, Plaintiff was involved in a solo motorcycle accident at a Vacaville, California rest stop, now attributes a left knee injury and an arthroscopic procedure performed by Dr. William Duffy the following year to the accident, and pursued a personal injury claim against the State of California for maintaining the rest stop in a dangerous condition, which claim was dismissed and Plaintiff paid certain costs to the State.

/////

12.     Whether Plaintiff filed approximately twenty-five discrimination complaints in small claims court against the City of Sacramento before the year 2000 over a six month to one year period, all of which were dismissed, and the discriminatory access barriers identified in the small claims complaints consisted of alleged unusable, unsafe curb ramps and sidewalks.

13.     Whether Plaintiff has filed approximately forty-eight access litigation cases in the Eastern District of California and whether, starting in the late '90s, Plaintiff received money damages in the majority of the access litigation cases he has filed.

14.     Whether in 2001 Plaintiff applied for and was granted social security disability based on his knee condition.

15.     Whether, since using attorneys to represent him in his access litigation cases, Plaintiff's approach has been to file the lawsuit and then negotiate.

16.     Whether Plaintiff suffers from chronic and acute bilateral osteoarthritis in his knee joints, shoulders, and hands.

17.     Whether Plaintiff has a prescription from a medical doctor for his power wheelchair.

18.     Whether in or about mid March, the Defendants presented Plaintiff with a new rental agreement requiring him to be a guarantor on a lease, even though Aza Cheung had already established an excellent three (3) year payment history with Fairmont at Willow Creek and had recently entered into a fourth rental agreement.

19.     Whether after Plaintiff and Aza Cheung were married on April 7, 2007, Fairmont at Willow Creek presented them with yet another new lease but, as a condition of approval, wanted Aza's ex-husband's permission for Plaintiff and Aza to sign the new lease.

20.     Whether on April 12, 2007, Plaintiff and Aza received a threat of eviction notice from Kris Bell with Fairmont at Willow Creek, and Aza Kemper's rent and utility checks were returned with the notice.

/////

21.     Whether at the times material to this lawsuit and after the complaint was filed, the Defendants continued allowing vendors and employees to either park in the accessible parking space in front of the rental office, or to either block or park in Plaintiff's non-compliant parking space.

22.     Whether the Defendants have failed to provide Kemper with a compliant accessible parking space as requested, instead providing him with a noncompliant parking space, as the stall is too narrow and has no access aisle or frontal access to the pedestrian path of travel or sidewalk due to having no curb ramp.

23.     Whether there are in excess of 30 separate access violations (ADAAG/FHA/Title 24) which were neither addressed nor disputed by Defendants' access expert, Kim Blackseth, in his report.

24.     The date when Plaintiff began living with Aza Cheung and her children at Fairmont at Willow Creek.

25.     Whether Aza Cheung informed the Fairmont at Willow Creek staff at any time during the application process for apartment no. 111 that she intended to have Plaintiff live with her at her Fairmont at Willow Creek apartment.

26.     Whether Aza Cheung informed the Fairmont at Willow Creek staff at any time before a notice of lease violation was posted on her door and a parking violation notice was placed on Plaintiff's vehicle that she intended to have Plaintiff live with her at her Fairmont at Willow Creek apartment.

27.     Whether Aza Cheung had provided the Fairmont at Willow Creek staff any information about Plaintiff's vehicle at any time before a notice of parking violation was placed on Plaintiff's vehicle.

28.     Whether the Fairmont at Willow Creek staff were retaliating against Plaintiff for making accommodation requests based on disability when they issued Aza Cheung notices of lease and parking violations, when Sera Andersen suggested that Plaintiff move his car

occasionally to a different parking space to assure that it would not be towed, and when they insisted that Plaintiff complete the rental application process if he intended to live at the Fairmont at Willow Creek.

29.     Whether the Fairmont at Willow Creek staff were retaliating against Plaintiff for making accommodation requests based on disability when they requested that Plaintiff complete as a part of the rental application process the two forms entitled "Request for Reasonable Accommodation" and "Verification of Disability for Modification or Accommodation."

30.     The circumstances surrounding the interaction between Plaintiff, Aza Cheung, and the Fairmont at Willow Creek staff relative to the requests for accommodation made in Plaintiff's January 31, 2007 e-mail.

31.     The physical abnormalities and activity limitations upon which Plaintiff bases his standing as a person with disabilities for the purpose of pursuing his injunctive relief claims under the ADA, FHA, DPA and Unruh Acts.

32.     The physical abnormalities and activity limitations upon which Plaintiff bases his claims for statutory and actual damages under the ADA, FHA, DPA and Unruh Acts.

33.     Whether Defendants engaged in any acts of retaliation against Plaintiff because he demanded accommodations based on his alleged disability.

34.     Whether Defendants denied or failed to reasonably respond to Plaintiff's demands for accommodations based on his alleged disability.

35.     Whether discriminatory access barriers deprived Plaintiff of equal use and enjoyment of the areas of Fairmont at Willow Creek that are deemed places of public accommodation under the federal and state statutes upon which Plaintiff bases this litigation.

36.     Whether discriminatory access barriers deprived Plaintiff of equal use and enjoyment of his apartment or common areas of Fairmont at Willow Creek under the federal and state statutes upon which Plaintiff bases this litigation.

/////

37.     Whether Plaintiff sustained physical and/or emotional distress injuries as a result of an encounter with any condition at Fairmont at Willow Creek that Plaintiff claims constitutes an access barrier to a person with disabilities under the federal and state statutes upon which Plaintiff bases this litigation.

38.     Whether Plaintiff derives his entire income from access litigation settlements and his social security disability benefits.

**B.    Disputed Core Facts Relevant to Alleged Violation of the ADA**

1.      Whether Plaintiff is a qualified individual with a disability under the ADA and is substantially limited in the major life activity of walking.

2.      Whether Plaintiff has standing as a disabled person to pursue injunctive relief and/or money damages for alleged ADA violations in the undisputed public accommodation areas in and around the Fairmont at Willow Creek Rental Office.

3.      Whether the public accommodation areas in and around the Fairmont at Willow Creek Rental Office are in violation of the ADA.

4.      Whether the Fairmont at Willow Creek Fitness Center comes within the purview of the ADA as a public accommodation facility.

5.      Whether Defendants discriminated against Plaintiff on the basis of a disability.

6.      Whether Plaintiff is entitled to injunctive relief or statutory damages against Defendants for any violation of the ADA.

**C.    Disputed Core Facts Relevant to Alleged Violation of the FHA**

1.      Whether in October 2007 Defendants installed handicap parking signs and painted accessible handicap parking spaces in the tenant parking areas.

2.      Whether, in response to Plaintiff's accommodation demand, trash cans and the newspaper dispensers located in the vicinity of the Fairmont at Willow Creek mailbox kiosk nearest Plaintiff's apartment were moved off the sidewalk.

/////

14

3.     Whether, in response to Plaintiff's accommodation demand, the Fairmont at Willow Creek staff obtained reassignment of Aza Cheung and Plaintiff's mailbox from the United States Post Office.

4.     Whether, in response to Plaintiff's accommodation demand for an accessible trash bin, the Fairmont at Willow Creek staff informed Plaintiff that he could place his trash bags alongside the existing receptacle and a staff member would deposit the trash for him.

5.     Whether, in response to Plaintiff's accommodation demand, Plaintiff was provided as a reserved space the parking space closest to his apartment.

6.     Whether, in response to Plaintiff's accommodation demand, a reserved parking space sign was placed in front of the parking space closest to his apartment.

7.     Whether, following Plaintiff's accommodation demand, the manual key locks for the pool entrance gates were replaced with card keys.

8.     Whether, in response to Plaintiff's accommodation demand, the pavement was extended on the strike side of one of the pool gates.

9.     Whether, in response to Plaintiff's accommodation demand, the rubber mat placed just inside the fitness center was replaced with a thinner mat.

10.    Whether the access violations which were neither addressed nor disputed by Defendants' access expert, Kim Blackseth, in his report include, but are not limited to, non-compliant accessible parking spaces, including Plaintiff's assigned parking space and the gated entry by the pool.

11.    Whether Plaintiff's accommodation requests were either disregarded entirely or, if responded to, the actions taken were unreasonably delayed and/or inadequate.

12.    Whether Plaintiff is a qualified individual with a disability under the FHA and is substantially limited in the major life activity of walking.

/////

/////

**D.      Disputed Core Facts Relevant to Alleged Violation of the DPA**

1.      Whether in October 2007 Defendants installed handicap parking signs and painted accessible handicap parking spaces in the tenant parking areas.

2.      Whether, in response to Plaintiff's accommodation demand, trash cans and the newspaper dispensers located in the vicinity of the Fairmont at Willow Creek mailbox kiosk nearest Plaintiff's apartment were moved off the sidewalk.

3.      Whether, in response to Plaintiff's accommodation demand, the Fairmont at Willow Creek staff obtained reassignment of Aza Cheung and Plaintiff's mailbox from the United States Post Office.

4.      Whether, in response to Plaintiff's accommodation demand for an accessible trash bin, the Fairmont at Willow Creek staff informed Plaintiff that he could place his trash bags alongside the existing receptacle and a staff member would deposit the trash for him.

5.      Whether, in response to Plaintiff's accommodation demand, Plaintiff was provided as a reserved space the parking space closest to his apartment.

6.      Whether, in response to Plaintiff's accommodation demand, a reserved parking space sign was placed in front of the parking space closest to his apartment.

7.      Whether, following Plaintiff's accommodation demand, the manual key locks for the pool entrance gates were replaced with card keys.

8.      Whether, in response to Plaintiff's accommodation demand, the pavement was extended on the strike side of one of the pool gates.

9.      Whether, in response to Plaintiff's accommodation demand, the rubber mat placed just inside the fitness center was replaced with a thinner mat.

10.      Whether the access violations which were neither addressed nor disputed by Defendants' access expert, Kim Blackseth, in his report include, but are not limited to, non-compliant accessible parking spaces, including Plaintiff's assigned parking space, the gated entry by the pool, and other violations documented in a subsequent site inspection by Plaintiff's expert.

11.     Whether Plaintiff's accommodation requests were either disregarded entirely or, if responded to, the actions taken were either unreasonably delayed and/or inadequate.

**E.      Disputed Core Facts Relevant to Alleged Violation of the Unruh Act**

1.     Whether an Unruh Act claim can be predicated on a refusal to make reasonable accommodations in rules, policies, practices, or services when necessary to afford a disabled person equal opportunity to use and enjoy a dwelling and, accordingly, whether a reasonable accommodation under the FHA can also be dispositive of an Unruh Act claim.

2.     Whether Plaintiff has standing as a disabled person to pursue injunctive relief and/or money damages for alleged Unruh Act violations in the undisputed public accommodation areas in and around the Fairmont at Willow Creek Rental Office.

3.     Whether the undisputed public accommodation areas in and around the Fairmont at Willow Creek Rental Office are in violation of the Unruh Act.

4.     Whether the Fairmont at Willow Creek Fitness Center comes within the purview of the Unruh Act.

5.     Whether Defendants discriminated against Plaintiff on the basis of a disability.

6.     Whether Plaintiff is entitled to injunctive relief or statutory damages against Defendants for any violation of the Unruh Act.

**F.      Disputed Core Facts Relevant to Alleged Retaliatory Conduct by Defendants**

1.     Whether Plaintiff is a qualified individual with a disability and substantially limited in the major life activity of walking.

2.     Whether Plaintiff cannot walk any distance with a cane or forearm crutch without enduring severe pain.

3.     Whether Plaintiff is mobility impaired and has been confined to a wheelchair since 2001.

4.     Whether Plaintiff has lived with his wife Aza at the Fairmont at Willow Creek since September 2006.

1        5.      Whether prior to Plaintiff's moving into apartment 111 at the Fairmont at Willow

2  Creek Aza entered into a new lease agreement with the understanding that Plaintiff would be

3  residing with her full time.

4        6.      Whether in or about late October or early November 2006, Plaintiff made

5  complaints to the Fairmont at Willow Creek management and/or staff about the numerous and

6  serious architectural barriers to access that he had encountered at Fairmont at Willow Creek in

7  violation of federal and state law, including an inaccessible faucet, the lack of compliant

8  accessible parking spaces, the inaccessible path of travel or sidewalks leading to public and

9  common use areas, the inaccessible entrance to the swimming pool, and the inaccessible entrance

10  to the rental office.

11        7.      Whether, instead of trying to accommodate Plaintiff's requests for reasonable

12  accommodations, Fairmont at Willow Creek staff began retaliating against Plaintiff and Aza,

13  such as when Plaintiff and Aza returned from vacation on January 4, 2007, and Aza was

14  confronted with a Notice of Lease Violation (the "Notice") due to an unauthorized occupant and

15  animal in her apartment and Plaintiff discovered that a tow tag had been placed on his vehicle.

16        8.      Whether on or about January 5, 2007, when Aza and Plaintiff spoke with rental

17  agent Sera about the Notice, they were advised that for identification purposes and to clarify who

18  was living in the apartment Plaintiff would need to fill out an application and Plaintiff was

19  advised to park his vehicle in a different parking space every five days in order to avoid the

20  appearance that the vehicle was abandoned and risk having it towed as a result.

21        9.      Whether, except for the removal of trash cans and a newspaper dispenser blocking

22  Plaintiff's path of travel, the removal of one door to one trash enclosure, and the replacement of

23  Plaintiff's faucet, Plaintiff received any of the reasonable accommodations he requested.

24        10.      Whether in or about mid March, Willow Creek presented Plaintiff with a new

25  rental agreement requiring Plaintiff to be a guarantor on the lease, even though Aza had already

26  /////

1  established an excellent three-year payment history with Willow Creek and had recently entered
2  into a fourth rental agreement.

3       11.    Whether, after Plaintiff and Aza were married on April 7, 2007, Fairmont at
4  Willow Creek staff presented them with yet another new lease, but as a condition of approval
5  wanted Aza's ex-husband's permission for Plaintiff and Aza to sign the new lease.

6       12.    Whether Willow Creek staff sought Aza's ex-husband's approval for the new
7  lease even though Plaintiff has excellent credit and Aza had over 4 years of excellent payment
8  history with Willow Creek.

9       13.    Whether Defendants have failed to provide Plaintiff with the accessible parking
10  space he requested, instead providing him with a noncompliant parking space for which the stall
11  is too narrow, there is no access aisle, and there is no access to the pedestrian path of travel or the
12  sidewalk due to the absence of a curb ramp.

13       14.    Whether, as a result of Defendants' failure to provide reasonable accommodations
14  and remove architectural barriers to access, Plaintiff has been forced to endure unnecessary
15  physical pain and mental anguish on a daily basis for over one year.

16       15.    Whether Plaintiff has standing as a disabled person to assert claims of retaliation
17  against Defendants.

18            **V.  <u>DISPUTED EVIDENTIARY ISSUES</u>**

19       Plaintiff anticipates the following motions in limine:

20       1.    To bar defense expert Kim Blackseth from offering opinions or evidence
21  regarding access violations not stated in his report or in defendants' expert disclosure.

22       2.    To bar defense expert Dr. Sfakianos from offering any opinions or
23  evidence of plaintiff's disability which are not specifically stated or rendered in his initial or
24  supplemental report or in defendants' expert disclosure, and specifically any testimony that
25  plaintiff does not meet the definition of disabled or that his disability does not affect a major life
26  activity under applicable access and/or fair housing laws.

3.      To bar defense expert Dr. Sfakianos from testifying at trial on the grounds that his initial and supplemental reports fail to satisfy the requirements of Federal Rule of Civil Procedure 26.

4.      To bar defendants from offering evidence of plaintiff's prior or existing ADA-related litigation outside this case.

5.      To bar defendants from offering evidence of plaintiff's receipt of settlement monies arising out of prior or existing ADA-related litigations outside this case.

6.      To bar defendants from introducing evidence of plaintiff's sources of income.

Defendants anticipate the following motions in limine:

1.      To exclude plaintiff's introduction of evidence relating to medical findings and opinions of plaintiff's health care providers that plaintiff has at any time before or since his first demands for accommodations to defendants based on his alleged disabilities been significantly limited in his major life activities because of his physical conditions.

2.      To limit plaintiff to one disability expert.

Parties will not be permitted to bring motions in limine relative to any evidentiary issue not listed in the final pretrial order, absent a showing that the issue was not reasonably foreseeable at the time of the Final Pretrial Conference.

## VI.  **RELIEF SOUGHT**

By their pretrial statement, plaintiff seeks injunctive relief, damages, and attorney's fees as provided under the ADA, FHA, DPA, and Unruh Act.

## VII.  **POINTS OF LAW**

The parties shall brief the elements of all causes of action, as well as the relevant legal standards, burdens of proof, defenses, and damages.  In addition, the parties shall brief:

/////

/////

1        1.     Plaintiff's standing as a disabled person to seek the injunctive relief and

2 damages he claims under the Americans With Disabilities Act, the Fair Housing Act, the Unruh

3 Act, and the California Disabled Persons Act;

4        2.     Plaintiff's entitlement to monetary damages, statutory or actual;

5        3.     Plaintiff's standing to seek injunctive relief based on alleged building

6 violations in the women's leasing office restroom;

7        4.     Whether the ADA applies to the Fairmont at Willow Creek fitness center.

8        The parties are free to brief any additional points of law which they believe may

9 be necessary for resolution of this matter at trial.

10        Counsel are directed to Local Rule 16-285 regarding the contents of trial briefs,

11 which shall be filed by both sides on or before November 24, 2009.

12                **VIII.  <u>ABANDONED ISSUES</u>**

13        Defendants have withdrawn their affirmative defenses.  No other issues have been

14 withdrawn or abandoned.

15                **IX.  <u>WITNESSES</u>**

16        Plaintiff anticipates calling the witnesses listed in Attachment "A."

17        Defendants anticipate calling the witnesses listed in Attachment "B."

18        Each party may call a witness designated by the other party.

19        A.     No other witnesses will be permitted to testify unless:

20        (1)     The party offering the witness demonstrates that the witness is for the

21 purpose of rebutting evidence which could not be reasonably anticipated at the Final Pretrial

22 Conference, or

23        (2)     The witness was discovered after the Final Pretrial Conference and the

24 proffering party makes the showing required in "B" below.

25        B.     Upon the post-Final Pretrial Conference discovery of witnesses, counsel

26 shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so

1  that the court may consider at trial whether the witnesses will be permitted to testify.  The

2  witnesses will not be permitted to testify unless:

3           (1)     The witnesses could not reasonably have been discovered prior to the Final

4  Pretrial Conference;

5           (2)     The court and opposing counsel were promptly notified upon discovery of

6  the witnesses;

7           (3)     If time permitted, counsel proffered the witnesses for deposition; and

8           (4)     If time did not permit, a reasonable summary of the witnesses' testimony

9  was provided to opposing counsel.

10              **X.  EXHIBITS, SCHEDULES AND SUMMARIES**

11          At present, plaintiff contemplates by way of exhibits those listed in Attachment

12  "C."

13          At present, defendants contemplate by way of exhibits those listed in Attachment

14  "D."

15          A.     No other exhibits will be permitted to be introduced unless:

16          (1)     The party proffering the exhibit demonstrates that the exhibit is for the

17  purpose of rebutting evidence which could not be reasonably anticipated at the Final Pretrial

18  Conference, or

19          (2)     The exhibit was discovered after the Final Pretrial Conference and the

20  proffering party makes the showing required in paragraph "B," below.

21          B.     Upon the post-Final Pretrial Conference discovery of exhibits, the

22  attorneys shall promptly inform the court and opposing counsel of the existence of such exhibits

23  so that the court may consider at trial their admissibility.  The exhibits will not be received unless

24  the proffering party demonstrates:

25          (1)     The exhibits could not reasonably have been discovered prior to the Final

26  Pretrial Conference;

1    (2)    The court and counsel were promptly informed of their existence; and

2    (3)    Counsel forwarded a copy of the exhibit(s) (if physically possible) to

3  opposing counsel.  If the exhibit(s) may not be copied, the proffering counsel must show that he

4  or she has made the exhibit(s) reasonably available for inspection by opposing counsel.

5    The parties shall exchange copies of all exhibits not later than fourteen (14) days

6  after the Pretrial Order is filed.  Each party is then granted one week to file objections to the other

7  party's exhibits.  In making an objection, the party shall set forth the grounds for the objection.

8    Counsel for each party shall appear before and present an original and one (1)

9  copy of each exhibit to Pete Buzo, courtroom deputy for the undersigned, not later than 8:30 a.m.

10  on the date set for trial.  Each exhibit not objected to shall be marked and received into evidence

11  and will require no further foundation.  Each exhibit objected to will be marked for identification

12  only.

13    **XI.  DISCOVERY DOCUMENTS**

14    Plaintiff anticipates introducing the following discovery documents at trial:

15    1.  Deposition transcript of Edward Kemper;

16    2.  Deposition transcript of Aza Kemper;

17    3.  Plaintiff's Initial Disclosures;

18    4.  Defendants' Initial Disclosures;

19    5.  Plaintiff's Expert Disclosures and Reports;

20    6.  Defendants' Expert Disclosures and Reports, including supplemental reports;

21    7.  Defendants' Responses to Special Interrogatories, Set One;

22    8.  Defendants' Responses to Special Interrogatories, Set Two; and

23    9.  Defendants' Responses to Request for Production, Set One.

24    Defendants intend to introduce the following discovery documents at trial:

25    1.  Plaintiff's Responses to Defendants' First Set of Interrogatories Nos. 1, 2, 3, 4,

26  5, 8, 9, 10, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25;

1    2.  Deposition Transcript of Edward Kemper; and

2    3.  Deposition Transcript of Aza Kemper.

3  ## XII.  FURTHER DISCOVERY OR MOTIONS

4        Pursuant to the Status (Pretrial Scheduling) Order filed October 15, 2007, all non-

5  expert discovery was to have been conducted so as to be completed as of June 13, 2008, and all

6  law and motion was to have been completed as of October 13, 2008.  The court confirms that

7  discovery and law and motion are closed.  Although the parties are free to conduct discovery

8  pursuant to informal agreement, any such agreement will not be enforceable in this court.

9        Motions in limine shall be filed no later than two weeks prior to the first day of

10  trial.  Any opposition to motions in limine shall be filed no later than one week prior to the first

11  day of trial.  Motions in limine will be heard on the first day of trial at 9:00 a.m.

12  ## XIII.  STIPULATIONS

13        The parties have agreed to the following stipulations for trial purposes:

14        1.  The Fairmont at Willow Creek leasing office, the prospective tenant parking

15  area, the entrance to the leasing office, and the leasing office men's restroom come within the

16  purview of the ADA, the Unruh Act and the DPA section 54(a), and the ADAAG and California

17  Building Code accessibility guidelines for disabled persons apply.

18        2.  The Fairmont at Willow Creek common areas and apartment units come within

19  the purview of the FHA section 3064(f)(3) and the DPA section 54.1(b)(1).

20        In addition, the parties stipulate to the authenticity of the documentary evidence to

21  be introduced by the parties at trial, while reserving the right to all other applicable evidentiary

22  objections.

23  ## XIV.  AMENDMENTS/DISMISSALS

24        On February 11, 2009, the district judge then assigned to the case denied

25  plaintiff's January 5, 2009 motion for leave to file an amended complaint.

26  /////

## XV.  **FURTHER TRIAL PREPARATION**

A.      Counsel are directed to Local Rule 47-162 for procedures applicable to proposed voir dire.  A copy of the court's standard voir dire is attached to this tentative pretrial order.  Any additional proposed voir dire shall be filed by counsel no later than one week prior to the first day of trial.

B.      Counsel are informed that the court has a set of standard jury instructions that covers aspects of the trial other than the specific claims of plaintiff's complaint.  A set of those standard jury instructions is attached to this tentative pretrial order.  Counsel need not prepare instructions concerning matters within the scope of the standard instructions.

C.      Counsel shall submit their proposed jury instructions to the court no later than one week prior to the first day of trial.  The proposed instructions shall be prepared and submitted in accordance with Local Rule 51-163(b), (c), and (d).  In accordance with Local Rule 51-163(e), the proposed jury instructions shall be accompanied by a form or forms of verdict and by any request for special verdicts or interrogatories to be answered in connection with a general verdict.

D.      It is the duty of counsel to ensure that any deposition which is to be used at trial has been submitted to the court in accordance with Local Rule 5-133(j).  Counsel are cautioned that a failure to discharge this duty may result in the court precluding use of the deposition or imposition of such other sanctions as the court deems appropriate.

E.      The parties shall file with the court and exchange between themselves not later than one week prior to the first day of trial a statement designating portions of depositions intended to be offered or read into evidence at the trial (except for portions to be used only for impeachment or rebuttal).

F.      The parties shall file with the court and exchange between themselves not later than one week prior to the first day of trial a statement designating the answers or portions

/////

of answers to interrogatories intended to be offered or read into evidence at the trial (except for portions to be used only for impeachment or rebuttal).

## XVI.  SETTLEMENT NEGOTIATIONS

The parties participated in mediation early in the case.  On June 11, 2009, the undersigned conducted a settlement conference pursuant to Local Rule 16-270.

## XVII.  AGREED STATEMENTS

The parties have provided the following joint statement of the case:

Plaintiff Edward Kemper has filed suit against Defendants Fairmont Folsom, LLC and CWS Apartment Homes, LLC. Defendant Fairmont Folsom owns, and CWS Apartment Homes manages, the Fairmont at Willow Creek Apartments located in Folsom, California.  Plaintiff has become a tenant at the Fairmont at Willow Creek Apartments.  Plaintiff contends that he is a disabled person and that federal and state laws entitle him to certain rights of accessibility to public facilities and housing that he contends have been violated by Defendants.  Plaintiff further contends that Defendants retaliated against him for asserting his rights of accessibility at the Fairmont at Willow Creek Apartments. Plaintiff contends he is entitled to money and statutory damages against Defendants.  Defendants deny Plaintiff's claims in their entirety.

The parties' agreed statement will be read to the jury during jury selection and at trial.

## XVIII.  SEPARATE TRIAL OF ISSUES

None requested.

## XIX.  IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

No appointment of impartial experts is needed.  Defendants anticipate a motion in limine seeking to limit plaintiff to one disability expert.

## XX.  ATTORNEYS' FEES

The award of attorneys' fees to prevailing parties pursuant to statute or rule will be handled by motion in accordance with Local Rule 54-293.

## XXI.  MISCELLANEOUS

None.

## XXII.  ESTIMATE OF TRIAL TIME/TRIAL DATE

Trial by jury is **CONFIRMED** for Tuesday, December 1, 2009, at 10:00 a.m., in Courtroom No. 27.  The parties represent in good faith that the trial will take approximately six court days.

Except as otherwise ordered, trial will be conducted during the first week on Tuesday through Thursday from 9:00 a.m. to 4:30 p.m., and during the second week on Monday through Wednesday from 9:00 a.m. to 4:30 p.m.  Whether trial will be conducted on Friday December 4, 2009, is left open.  Counsel are to call Pete Buzo, Courtroom Deputy, at (916) 930-4128, one week prior to trial to ascertain the status of the trial date.

## XXIII.  OBJECTIONS TO PRETRIAL ORDER

Each party is granted ten (10) calendar days from the filing date of the Pretrial Order (Tentative) to object to or propose changes to the order.  Each party is granted five (5) calendar days to respond to the other party's objections or proposed changes.  If there are no objections or proposed changes, the Pretrial Order (Tentative) will become the Final Pretrial Order without further order of the court.

Pursuant to Federal Rule of Civil Procedure 16(e), the Final Pretrial Order shall control the subsequent course of this action and shall be modified only to prevent manifest injustice.

## XXIV.  OTHER

All time limits and dates that refer to the Pretrial Order are references to the date on which this Pretrial Order (Tentative) is filed and not to the date on which any Final Pretrial Order is filed.

IT IS SO ORDERED.

DATED: November 3, 2009.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
ddad1/orders.consent/kemper0647.pto.

**ATTACHMENT "A"**

**WITNESS LIST OF PLAINTIFF EDWARD L. KEMPER**

1.  Edward Kemper

2.  Aza Kemper

3.  Asela Cheung

4.  Kris Bell

5.  Sera Andersen

6.  Jack Sipes

7.  Eric Contreras

8.  James Vitale

9.  Richard Londono

10. Loretto Fabricante, CPA

11. Peter Sfakianos, M.D.

12. Kim Blackseth

13. William Duffy, M.D.

14. M. Richard Goldberg, M.D.

15. Roy N. Pottenger, M.D.

16. Michael Denton, P.A.

17. James Van Den Bogaerde, M.D.

18. John Gisla, M.D.

19. Rita Bermudez, M.D.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

<u>**ATTACHMENT "B"**</u>

**WITNESS LIST OF DEFENDANTS**

**FAIRMONT FOLSOM, LLC and CWS APARTMENT HOMES, LLC**

1.   Kris Bell

2.   Jack Sipes

3.   Sera Andersen

4.   Peter Sfakianos, M.D.

5.   Kim Blackseth

6.   Frank Gregory

7.   Cherilyn Sepulado

8.   Carrie Shaw

9.   Bret Harding

10.   Aza Cheung

11.   Michael Lynch

## ATTACHMENT "C"

### EXHIBIT LIST OF PLAINTIFF EDWARD L. KEMPER

1. Plaintiff's Complaint

2. Defendants' Answer to Complaint

3. Expert Disclosure of Eric Contreras and ADAAG Consulting, including CV

4. Survey Report prepared by Eric Contreras and ADAAG Consulting, 12/13/07, including photos, notes, estimates and drawings

5. Photos taken by Eric Contreras depicting the Fairmont apartment complex, in or around April 2009

6. Survey Report prepared by Eric Contreras and ADAAG Consulting, 6/1/09, including photos, notes, estimates and drawings

7. Declaration of Eric Contreras in support of motion for summary judgment

8. Expert Disclosure of James Vitale, including CV

9. Survey Report prepared by James Vitale

10. Declaration of James Vitale in support of motion for summary judgment

11. Expert Disclosure of Richard Londono, including CV

12. Expert Disclosure of Loretta Fabricante, including CV

13. Plaintiff's Responses to Defendants' Interrogatories, including Set Nos. 1 and 2

14. Plaintiff's Responses to Defendants' Request for Production of Documents, including Set Nos. 1 and 2

15. Photos taken by Plaintiff of access barriers in and around the subject apartment complex, and subsequent areas of construction by Defendants

16. Deposition transcript of Edward Kemper, and exhibits thereto

17. All of Plaintiff's medical records, whether or not relied upon by Dr. Sfakianos

18. Service dog tags

19. Plaintiff's disabled hunter's license

20. Plaintiff's fishing license

21. California State Parks disabled discount pass

22. Paratransit disabled certification

23. Declaration of Edward Kemper submitted in support of motion for summary judgment

24. Deposition transcript of Aza Kemper, and exhibits thereto

25. Expert disclosure of Kim Blackseth, including CV

26. Survey Report prepared by Kim Blackseth

27. Declaration of Kim Blackseth submitted in opposition to motion for summary judgment

28. Defendants' Responses to Plaintiff's Interrogatories, including Set Nos. 1 and 2

29. Defendants' Responses to Plaintiff's Request for Production of Documents, including Set Nos. 1 and 2

30. Defendants' supplemental response to Plaintiff's Request for Production of Documents, Set 1

31. Architectural drawings of the subject apartment complex and real property produced by Defendants in response to Plaintiff's Request for Production of Documents

32. Certificate of Occupancy, dated 6/29/01

33. Dr. Richard Goldberg's written prescription for Plaintiff's power wheelchair, dated 10/13/05

34. Power wheelchair Order Confirmation, dated 1/30/06

35. Expert Disclosure of Dr. Sfakianos, including his CV and "legal fee schedule"

36. Initial DME Report of Dr. Sfakianos

37. Supplemental DME Report of Dr. Sfakianos

38. Declaration of Dr. Sfakianos filed in opposition to motion for summary judgment

39. Supplemental Declaration of Dr. Sfakianos filed in opposition to motion for summary judgment

40. DME report of Dr. Sfakianos in the matter of <u>Vercelli v. Tamarkin</u>, dated January 29, 2009

41.   DME report of Dr. Sfakianos in the matter of <u>Crawford v. Autotronics</u>, dated June 22, 2009

42.   DME report of Dr. Sfakianos in the matter of <u>Zaffa v. Hernandez</u>, dated July 17, 2009

43.   Deposition transcript of Dr. Sfakianos in the matter of <u>Blazejewski v. Don's Bicycle Store</u>, July 30, 2003

44.   Deposition transcript of Dr. Sfakianos in the matter of <u>Ramos v. Stafford</u>, June 1, 2006

45.   Declaration of Jack Sipes filed in opposition to motion for summary judgment

46.   Declaration of Kris Bell filed in opposition to motion for summary judgment

47.   Declaration of Kris Bell filed in opposition to motion to amend complaint

48.   Declaration of Sera Andersen filed in opposition to motion for summary judgment

49.   Blow-up of landscape drawing of the Fairmont apartment complex

50.   Lease agreement, dated 7/1/03

51.   Rental application, dated 8/15/06

52.   Aza Cheung rental application for residents and occupants, dated 9/16/06

53.   Fairmont at Willow Creek "Offer to Rent" form, dated 9/21/06

54.   Lease agreement and addendums, 10/6/06

55.   All leases involving Aza Cheung-Kemper, including 2006 lease agreement signed by Aza Cheung and Sze-Wo Cheung and the 2006 lease agreement by Edward Kemper and Aza Cheung

56.   Notice of Lease Violation dated 1/4/07

57.   Edward Kemper Rental Application for Residents and Occupants, dated 1/5/07

58.   All leases involving Edward Kemper, including the 2007 lease agreement by Edward Kemper and Aza Cheung

59.   E-mail communication from Plaintiff to Defendants requesting accommodations, dated 1/31/07

60.   Lease agreement and addendums, 3/2/07

61.  Edward Kemper credit report

62.  Aza Cheung credit report, including pay stubs

63.  Sze-Wo Cheung credit report, including pay stubs

64.  Emergency contact information and authorization to enter addendum to 2006 lease agreement

65.  Kris Bell cover letter dated 1/29/07 to Aza Cheung re roommate addition, request for reasonable accommodation and verification of disability for modification or accommodation forms

66.  Letter from Kris Bell to Aza and Sze-Wo Cheung re Edward Kemper's signing of lease, dated 4/10/07

67.  Lease addendum, dated 4/18/07

68.  Photograph of Edward Kemper's GMC vehicle

69.  Photograph of Aza Cheung's Toyota vehicle

**ATTACHMENT "D"**

**EXHIBIT LIST OF DEFENDANTS**

**FAIRMONT FOLSOM, LLC and CWS APARTMENT HOMES, LLC**

A.   Plaintiff's Complaint

B.   Blow-up map of Fairmont at Willow Creek

C.   Blow-up photos depicting alleged access barriers and any changes or accommodations made relative to alleged access barriers

D.   Fairmont at Willow Creek "Offer to Rent" form signed by Aza Cheung on September 21, 2006

E.   Aza Cheung credit report relative to 2006 lease application

F.   Sze-Wo Cheung credit report relative to 2006 lease application

G.   2006 Lease Agreement signed by Aza and Sze-Wo Cheung

H.   Emergency Contact Information and Authorization to Enter Addendum to 2006 Lease Agreement

I.   Aza Cheung Rental Application for Residents and Occupants signed September 16, 2006

J.   Notice of Lease Violation dated 01/03/07

K.   Edward Kemper Rental Application for Residents and Occupants signed 01/05/07

L.   Blow-up photograph of Ed Kemper's GMC vehicle

M.   Blow-up photograph of Aza Cheung's Toyota vehicle

N.   January 9, 2007 credit bureau report relative to Ed Kemper

O.   Kris Bell cover letter dated January 29, 2007 to Aza Cheung re application for new roommate addition

P.   Request for Reasonable Accommodation and Verification of Disability for Modification or Accommodation forms

34

1  Q. January 31, 2007 Edward Kemper e-mail demanding accommodations

2  R. 2007 Lease Agreement executed by Aza Cheung and Ed Kemper

3  S. Plaintiff's Responses to Defendants' Interrogatories

4  T. Medical Record Binder containing Plaintiff's medical records from health

5    care providers whose records have been obtained pursuant to subpoena

6    and provided to Defendants' medical expert Peter Sfakianos

7  U. Dr. Richard Goldberg handwritten prescription for Plaintiff dated 10/13/05

8    for a power wheel chair

9  V. Power Wheelchair Order Confirmation dated 1/30/06

10  W. April 10, 2007 letter from Kris Bell addressed to Aza and Sze-Wo Cheung

11    re Kemper's failure to sign lease.

12  X. Kemper access litigation case filings including filing dates

13  Y. Kemper's hunting and fishing license

14  Z. Kemper's crossbow or examplar

15  AA. News Report film depicting Plaintiff dated January 27, 2001

16  BB. Film footage taken of Edward Kemper taken on March 15, 2005

17  CC. Excerpts of Plaintiff's video deposition consisting of his testimony as to

18    the nature and extent of his alleged disability and demonstrating his level

19    of function relative to Plaintiff's upper and lower extremities

20  DD. News Report film featuring Plaintiff at Folsom High School dated Nov 19,

21    2008

22  EE. Film footage taken of Edward Kemper between August 11 and 16 of 2009

23  FF. Photographs taken of Edward Kemper on September 17, 2009

24  GG. Photographs depicting Kemper fifth wheel trailer

25 /////

26 /////

HH.   Plaintiff postings on the internet relative to his alleged disability status, disability advocacy, and disability claims based on alleged disabled person status including the instant action

II.   Plaintiff's September 22, 2007 Department of Fish and Game cross-bow violation citation

**<u>Voir Dire - Civil</u>**

1.   I am first going to ask you a number of questions as a group. If any of you have a response to any of these panel wide questions please raise your hand and I will call on you. After these general questions are completed, I will have some questions for you individually and the parties may then have a few additional questions for you.

[read brief description of the case]

2.   Counsel introduce themselves and identify their clients.

3.   Do any members of the panel know any of the lawyers or the parties?

4.   You have previously heard me describe this case, have any members of the panel heard or read anything about this case?

5.   In addition to the parties, the following persons may be called as witnesses in the case:

[read witness lists]

6.   Do any of you know any of the witnesses?

7.   Have any of you been a witness in or a party to a court proceeding?

8.   Have any of you served in the military?

9.   Have you or any family members or close friends ever worked for an attorney, a law firm or in a court system?  If yes, describe.

10.   Have you, any family member or a close relative ever been involved in civil litigation either as a plaintiff or a defendant?

11.   Have any of you ever been involved in civil litigation as a witness either at deposition or trial?

12.   Have any of you ever owned or managed your own business?

13.   Is there anything about the allegations in this lawsuit that causes any potential juror to believe they could not be fair and impartial in a case of this type.

14.   Do any of you know any reason why he or she cannot be fair to both sides in this case?

15.   The trial is expected to last for approximately ___ days. Is there any reason why any of you cannot give your full attention to the case during that time if selected as a juror?

16.   Would any member of the panel, if selected as a juror, have difficulty seeing or hearing the witnesses or fully concentrating upon the proceedings?

Individual Voir Dire

1.      Please look at the sheet on your chair and tell us about yourself, addressing each of the areas on the handout.

        [see attached sheet]

2.      Brief supplemental voir dire by counsel

**IF YOU ARE EXCUSED FOR ANY REASON, PLEASE LEAVE THIS QUESTIONNAIRE ON THE CHAIR.**

PLEASE STATE YOUR:

1.      NAME

2.      PLACE OF RESIDENCE

3.      PRESENT OCCUPATION

4.      PREVIOUS OCCUPATION

5.      EDUCATIONAL BACKGROUND/MILITARY SERVICE

6.      MARITAL STATUS

7.      SPOUSE'S OCCUPATION (FORMER SPOUSE IF DIVORCED)

8.      CHILDREN'S OCCUPATION

9.      PREVIOUS JURY EXPERIENCE, IF ANY

Instruction No.


Ladies and Gentlemen of the Jury:

It now becomes my duty to instruct you on the law.  It is your duty as jurors to follow the law and apply it to the evidence in the case.

You are required to follow the law whether you agree with it or not.

In following the law, you must consider all of the instructions and not single out some and ignore the others; all of the instructions are equally important.

Instruction No.

        You are the sole judges of the evidence in this case and it is
up to you to evaluate the witnesses and other evidence.  You are to
perform this duty without bias, sympathy, prejudice, or what you
think public opinion might be.  You must impartially consider all
the evidence in the case, following the law as stated in these
instructions.

1                          Instruction No.

2

3       This case should be considered and decided by you as an action

4   between persons of equal standing in the community, of equal worth,

5   and holding the same or similar stations in life.  The law is no

6   respecter of persons; all persons stand equal before the law and

7   are to be dealt with as equals in a court of justice.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Instruction No.


You do not have to decide any issue of fact in favor of the side that brought more witnesses or evidence to trial.

The test is which witnesses, and which evidence, convinces you because it is most believable.

In deciding contested issues, you should keep in mind who has the burden of proof on that issue as well as the applicable standard of proof under the law.

Instruction No.


There are two kinds of evidence, direct and circumstantial. Direct evidence is where a witness testifies to having actual knowledge of a fact. Circumstantial evidence is a chain of evidence from which you could find that another fact exists, even though no one directly testified as to that fact.

How much you believe should not depend on whether it is direct or circumstantial, but on whether the evidence is trustworthy and reliable. For that reason, you may find a fact has been proven by circumstantial evidence if that conclusion seems reasonable to you.

Instruction No.


The evidence in this case consists of the sworn testimony of the witnesses and all exhibits received into evidence.

You are to consider only the evidence admitted in the case. If the evidence has been admitted for a limited purpose, you are to consider it only for that purpose.

You must not consider for any purpose evidence as to which an objection was sustained by the Court, any evidence ordered stricken by the Court, or anything that you have seen or heard outside the courtroom.  The arguments and questions of counsel are not evidence and a question may be considered only as it gives meaning to the answer.

Instruction No.


    When the attorneys on both sides stipulate or agree to the existence of a fact, you must regard that fact as proven.

    In this regard, the following facts are undisputed:

    1.

    2.

    3.

    4.

    5.

    6.

1                          Instruction No.

2

3       Certain  testimony  has  been  read  into  evidence  from  a

4  deposition.  A deposition is testimony taken under oath before the

5  trial and preserved in writing.  You are to consider that testimony

6  as if it had been given in Court.

Instruction No.


In deciding what the facts are, you must consider all the evidence.   In doing this, you must decide which testimony to believe and which testimony to reject.   You may disbelieve all or any part of any witness' testimony.   In making that decision, some of the things you may consider include:

(1)   Was the witness able to see, hear, or know the things about which the witness testified?

(2)   How good is the witness' memory and is the witness able to testify clearly?

(3)   Was the witness' manner while testifying straightforward and convincing, or evasive and unconvincing?

(4)   Did the witness have an interest in the outcome of the case or any bias or prejudice concerning anyone or anything that mattered in the case, and if so, did that interest or bias affect the testimony?

(5)   How reasonable was the witness' testimony when you consider it in light of all the other evidence in the case?

(6)   Was the witness' testimony contradicted by what that witness said or did at another time, or by the testimony of other believable witnesses or evidence?

In deciding whether or not to believe a witness, remember that people sometimes forget things or sometimes get confused.   Because of that, you have to consider whether a contradiction is an innocent lapse of memory, and that may depend on whether it has to

do with an important fact that someone would not be likely to
forget or some small detail.

Instruction No.


    If a witness is shown knowingly to have testified falsely about this case, you have a right to distrust the rest of the witness' testimony.  On the other hand, you may accept any part of the testimony of that witness that you believe truthful.

Instruction No.

A witness who has special knowledge, skill, experience, or education in a particular field may give an opinion as an expert as to any matter in that field and explain the reasons for that opinion.  In deciding how persuasive that opinion is, you should consider the qualifications of the expert, how believable the expert was, and the reasons given for the opinion.  You don't have to agree with an expert's opinion, and you only have to give it the effect on your judgment that you think it deserves.

1                          Instruction No.

2

3        If only one side can produce evidence or call a witness and

4   did not do so, that may lead you to believe that the testimony or

5   evidence would be unfavorable to that party.  However, it would not

6   be proper to reach that conclusion if the evidence was equally

7   available to both parties, or where the evidence would be no more

8   than what was already in evidence.

Instruction No.


In these instructions I will tell you that either the
plaintiffs or the defendant has the burden of proving certain
issues.   The party having the burden of proof on an issue must
prove it by a "preponderance of the evidence."

By a preponderance of the evidence is meant the evidence which
is more convincing and more probably true.   If the evidence as to
any issue is evenly balanced, your finding upon that issue must be
against the party who had the burden of proving it.

In determining whether an issue has been proved by a
preponderance of the evidence, you should consider all of the
evidence having to do with that issue regardless of who produced
it.

Instruction No.

If, under the Court's instructions, you find that plaintiffs are entitled to a verdict against defendant, you must then award plaintiffs damages in an amount that will reasonably compensate plaintiffs for each of the following elements of claimed loss or harm.  You must find that such harm or loss was or will be suffered by the plaintiff and that such harm or loss was legally caused by the act upon which you base your finding of liability.

1                           Instruction No.

2

3        The reasonable value of working time lost to date.

4        In determining this amount, you should consider evidence of

5   plaintiff's earnings and earning capacity, how the plaintiff's time

6   was ordinarily occupied, and find what plaintiff was reasonably

7   certain to have earned but for the injury.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Instruction No.


Reasonable compensation for any pain, discomfort, fears, anxiety, and other mental and emotional distress which the plaintiffs suffered because of the injury and for any similar suffering you believe it is reasonably certain plaintiffs will suffer for the same reason.

The law sets no definite standard under which you must decide the amount to be awarded for pain and suffering.  In making this award, you are to exercise your authority calmly so that the amount of damages you fix compensates plaintiffs reasonably under the evidence in the case.

Instruction No.


You should compensate a plaintiff for any loss or harm which is reasonably certain to be suffered by plaintiff in the future as a legal result of the injury in question; however, you may not award speculative damages, which is compensation for future harm which, although possible, is not reasonably certain.

Instruction No.

Any person who claims damages in a lawsuit has a duty under the law to "mitigate" those damages, that is, to act reasonably under the circumstances to reduce or minimize the loss or damage. If the defendant proves by a preponderance of the evidence that the plaintiffs failed to mitigate the damages, then you should reduce the amount of plaintiffs' damages by an amount equal to that which could have been saved.

Instruction No.

If you find that the plaintiffs are entitled to a verdict, but you also find that under the instructions the plaintiffs are not entitled to an award of actual damages, then you may return a verdict for the plaintiff in some nominal sum such as One Dollar ($1.00).

1                          Instruction No.

2

3        Nothing I have said during the trial or in these instructions

4   and nothing in the verdict form is meant to suggest to you what

5   verdict I think you should find.  What the verdict shall be is the

6   exclusive responsibility of the jury.

1                           Instruction No.

2

3        The verdict must represent the considered judgment of each

4    juror and must be unanimous.

5        Each of you must decide the case for yourself, but only after

6    consulting with each other and impartially considering the evidence

7    in the case with your fellow jurors.   In the course of talking

8    about the case with the other jurors, you should be willing to

9    think about your own views and change your opinion if convinced it

10   is wrong.   On the other hand, do not surrender your honest belief

11   as to what the evidence shows just because your fellow jurors do

12   not agree with you, or just to get a verdict.

13       Remember during your discussions that you are judges.

14

15

16

17

18

19

20

21

22

23

24

25

26

Instruction No.


The first thing you should do after you enter the jury room is to select someone to act as your foreperson to lead your discussions and speak for the jury in Court.

Verdict forms have been prepared for your convenience.

You will take the forms to the jury room and, when you have reached unanimous agreement as to your verdict, the foreperson will fill in, date, and sign the verdict form upon which you unanimously agree, then advise the Court that you have reached a verdict.

Instruction No.


    If while you are discussing the case in the jury room you need to communicate with me, you may send a note through the Marshal. None of you should try to communicate with me except by a signed writing, and I will not communicate with any member of the jury about the case, other than in writing, or orally here in open court.

    As you will hear from the oath which the Marshals take, they too, as well as all other persons, are forbidden to communicate in any way with any member of the jury about the case.

    You are never to reveal to any person -- not even to me -- how you stand, numerically or otherwise, on any question until you have returned to court with your unanimous verdict.